BRADLEY BERNSTEIN SANDS LLP
DARIN SANDS, OSB No. 106624
dsands@bradleybernstein.com
1211 NW Glisan St., Suite 204
Portland, OR 97209
Telephone: 503.734.2480

GIBSON, DUNN & CRUTCHER LLP
STACIE B. FLETCHER *(Pro Hac Vice forthcoming)*
sfletcher@gibsondunn.com
1700 M Street, N.W.
Washington, DC 20036-4504
Telephone: 202.955.8500
Facsimile: 202.467.0539

JOSEPH EDMONDS *(Pro Hac Vice forthcoming)*
jedmonds@gibsondunn.com
3161 Michelson Drive, Suite 1200
Irvine, CA 92612-4412
Telephone: 949.451.3800

*Attorneys for Defendant Knife River Corporation*

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| JULIE THOMPSON and JOSEPH THOMPSON,<br><br>Plaintiffs,<br><br>vs.<br><br>KNIFE RIVER CORPORATION,<br><br>Defendant. | Case No.<br><br>**DECLARATION OF DARIN SANDS IN SUPPORT OF KNIFE RIVER CORPORATION'S NOTICE OF REMOVAL**<br><br>(Multnomah County Circuit Court Case No. 26CV35556) |

## DECLARATION OF DARIN SANDS

I, Darin Sands, hereby declare and state:

1. I am an attorney duly licensed to practice law before all courts of the State or Oregon as well as the United States District Court for the District of Oregon. I am a partner in the law firm of Bradley Bernstein Sands, LLP, and am one of the attorneys representing Defendant Knife River Corporation in this case. I have personal knowledge of the matters stated herein, and if asked to testify thereto, I could and would do so competently.

2. Attached hereto as **Exhibit A** is a true and correct copy of the Complaint and Summons served on Knife River Corporation in *Julie Thompson and Joseph Thompson v. Knife River Corporation*, Case No. 26CV35556, Multnomah County Circuit Court.

3. Attached hereto as **Exhibit B** is a true and correct copy of Knife River Corporation's Answer. This was submitted for filing on August 7, 2026 at 9:58 AM, in *Julie Thompson and Joseph Thompson v. Knife River Corporation*, Case No. 26CV35556, Multnomah County Circuit Court.

4. Attached hereto as **Exhibit C** is a true and correct copy of the complete docket in *Julie Thompson and Joseph Thompson v. Knife River Corporation*, Case No. 26CV35556, Multnomah County Circuit Court, as of the date of this filing.

I declare under penalty of perjury under the law of the State of Oregon that the foregoing is true and correct and that I executed this Declaration on August 7, 2026, in Portland, Oregon.

/s/ *Darin Sands*
Darin Sands

# EXHIBIT A

Wolters Kluwer

**CT Corporation**
**Service of Process Notification**
07/10/2026
CT Log Number 552733662

## Service of Process Transmittal Summary

**TO:** Amy Prokop
KRC Materials, Inc.
1150 W CENTURY AVE
BISMARCK, ND 58503-0942

**RE:** **Process Served in Oregon**

**FOR:** KRC Materials, Inc. (Domestic State: DE)

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | Re: JULIE THOMPSON and JOSEPH THOMPSON // To: KRC Materials, Inc. |
| **CASE #:** | 26CV35556 |
| **NATURE OF ACTION:** | Property Damage Litigation |
| **PROCESS SERVED ON:** | C T Corporation System, Salem, OR |
| **DATE/METHOD OF SERVICE:** | By Process Server on 07/10/2026 at 12:33 |
| **JURISDICTION SERVED:** | Oregon |
| **ACTION ITEMS:** | SOP Papers with Transmittal, via UPS Next Day Air<br>Image SOP<br>Email Notification, Amy Prokop amy.prokop@kniferiver.com<br>Email Notification, Karl Liepitz karl.liepitz@kniferiver.com<br>Email Notification, Rebekah Wallen rebekah.wallen@kniferiver.com |
| **REGISTERED AGENT CONTACT:** | CT Corporation System<br>780 Commercial Street? SE<br>Ste 100<br>Salem, OR 97301<br>866-401-8252<br>LargeCorporationTeam@wolterskluwer.com |

The information contained in this Transmittal is provided by CT for quick reference only. It does not constitute a legal opinion, and should not otherwise be relied on, as to the nature of action, the amount of damages, the answer date, or any other information contained in the included documents. The recipient(s) of this form is responsible for reviewing and interpreting the included documents and taking appropriate action, including consulting with its legal and other advisors as necessary. CT disclaims all liability for the information contained in this form, including for any omissions or inaccuracies that may be contained therein.

# PROCESS SERVER DELIVERY DETAILS

**Date:** Fri, Jul 10, 2026
**Server Name:** Drop Service

| | |
|---|---|
| Entity Served | KRC MATERIALS, INC. |
| Case Number | 26CV35556 |
| Jurisdiction | OR |

| Inserts | | |
|---|---|---|
| | | |

IN THE CIRCUIT COURT OF THE STATE OF OREGON

FOR THE COUNTY OF MULTNOMAH

| | |
|---|---|
| JULIE THOMPSON and JOSEPH THOMPSON,<br><br>Plaintiffs,<br><br>v.<br><br>KNIFE RIVER CORPORATION,<br><br>Defendant. | Case No.: 26CV35556<br><br>**SUMMONS** |

**TO:** KRC Materials Inc. aka Knife River Corporation
C T Corporation System
780 Commercial Street, Suite 100
Salem, OR 97301

You are hereby required to appear and defend the complaint filed against you in the above entitled action within thirty (30) days from the date of service of this summons upon you, and in case of your failure to do so, for want thereof, plaintiff(s) will apply to the court for the relief demanded in the complaint.

**NOTICE TO THE DEFENDANT: READ THESE PAPERS CAREFULLY!**

You must "appear" in this case or the other side will win automatically. To "appear" you must file with the court a legal document called a "motion" or "answer." The "motion" or "answer" must be given to the court clerk or administrator within 30 days along with the required filing fee. It must be in proper form and have proof of service on the plaintiff's attorney or, if the plaintiff does not have an attorney, proof of service on the plaintiff.

If you have questions, you should see an attorney immediately. If you need help in finding an attorney, you may contact the Oregon State Bar's Lawyer Referral Service online at www.oregonstatebar.org or by calling (503) 684-3763 (in the Portland metropolitan area) or toll-free elsewhere in Oregon at (800) 452-7636.

Signature of Attorney/Author for Plaintiffs

Steve D. Larson 863540
Attorney/Author's Name (typed or Printed) Bar No. (if any)

Stoll Stoll Berne Lokting & Shlachter P.C.
209 SW Oak Street, Suite 500
Address

Portland, Oregon 97204 (503) 227-1600
City State Zip Phone

Trial Attorney if other than above (typed or Printed) Bar No.

**STATE OF OREGON**, County of Multnomah ) ss.

I, the undersigned attorney of record for the plaintiff, certify that the foregoing is an exact and complete copy of the original summons in the above entitled action.

Steve D. Larson, OSB No. 863540
Attorneys for Plaintiff

**TO THE OFFICER OR OTHER PERSON SERVING THIS SUMMONS:** You are hereby directed to serve a true copy of this summons, together with a true copy of the complaint mentioned therein, upon the individual(s) or other legal entity(ies) to whom or which this summons is directed, and to make your proof of service on the reverse hereof or upon a separate similar document which you shall attach hereto.

Steve D. Larson, OSB No. 863540

**PROOF OF SERVICE**

STATE OF OREGON )
County of ____________________ ) ss.

I hereby certify that I made service of the foregoing summons upon the individuals and other legal entities to be served, named below, by delivering or leaving true copies of said summons and the complaint mentioned therein, certified to be such by the attorney for the plaintiff, as follows:

**Personal Service Upon Individual(s)**

Upon ________________________ , by delivering such true copy to him/her, personally and in person, at ____________ on __________, 20___, at _______ o'clock ___.M.

Upon ________________________ , by delivering such true copy to him/her, personally and in person, at ____________ on __________, 20___, at _______ o'clock ___.M.

**Substituted Service upon Individual(s)****

Upon ________________________ , by delivering such true copy at his/her dwelling house or usual place of abode, to-wit: ____________________________________________, to ________________________, who is a person over the age of 14 years and member of the household of the person served on ____________________, 20___, at ____ o'clock ___.M.

Upon ________________________ , by delivering such true copy at his/her dwelling house or usual place of abode, to-wit: ____________________________________________, to ________________________, who is a person over the age of 14 years and member of the household of the person served on ____________________, 20___, at ____ o'clock ___.M.

**Office Service upon Individual(s)**

Upon ____________________________________ , at the office which he/she maintains for the conduct of business at ____________________________________________, by leaving such true copy with ______________________, the person who is apparently in charge, on _______________, 20___, during normal working hours, at to-wit: ___ o'clock, ___M.

**Service on Corporations, limited Partnerships or Unincorporated Associations Subject to Suit Under a Common Name**

Upon ____________________________________________________, by (Name of Corporation, Limited Partnership, Etc.)

(a) delivering such true copy, personally and in person, to ______________________________who is a/the Registered Agent thereof; OR

(b) leaving such true copy with ________________________________ , the person who is apparently in charge of the office of ______________________________ , who is a/the *___________________________ thereof.

*Specify registered agent, officer (by title), director, general partner, managing agent.

at ____________________________________________ , on _______________, 20___, at ____ o'clock ___M.

| | |
|---|---|
| DATED:_______________________ 2023,<br><br>_______________________________<br>Sheriff<br><br>BY_______________________________<br>Deputy<br><br>The signature lines on the left should be used only by an Oregon county sheriff or deputy; all other servers complete certificate on the right. The Proof of Service above contains most, but not all, of the methods of service. For example, this form does not include proof of service on a minor or incompetent person. See ORCP 7D(2) and 7D(3) for complete service methods on particular parties. **Where substituted or office service is used, the plaintiff, as soon as reasonably possible, shall cause to be mailed a true copy of the summons and complaint to the defendant at the defendant's dwelling house or usual place of abode, together with a statement of the time, date and place at which such service was made. Use S-N Form No. 1149 or equivalent. | I further certify that I am a competent person 18 years of age or older and a resident of the state of service or the State of Oregon, and that I am not a party to nor an officer, director or employee of, nor attorney for any party, corporate or otherwise; that the person, firm or corporation served by me is the identical person, firm or corporation named in the action<br>Dated:_______________________________<br><br>_______________________________<br>Signature<br><br>_______________________________<br>Type or print name<br><br>_______________________________<br>Address<br><br>_______________________________<br>Phone |

Subscribed and Sworn to before me this ___ day of _______________________, 2023.

_______________________________
Notary Public of ______________________
My Commission expires: ________________



STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600 FAX (503) 227-6840

7/9/2026 11:27 AM
26CV35556

IN THE CIRCUIT COURT OF THE STATE OF OREGON

FOR THE COUNTY OF MULTNOMAH

| | |
|---|---|
| JULIE THOMPSON and JOSEPH THOMPSON,<br><br>Plaintiffs,<br><br>v.<br><br>KNIFE RIVER CORPORATION,<br><br>Defendant. | Case No.:<br><br>COMPLAINT<br>(Negligence, Negligence *Per Se*, Trespass, Trespass to Chattels, Public and Private Nuisance)<br><br>AMOUNT SOUGHT: OVER $26,000,000<br><br>Fee Statute: ORS 21.160(1)(e)<br><br>NOT SUBJECT TO MANDATORY ARBITRATION<br><br>DEMAND FOR JURY TRIAL |

Plaintiffs Julie and Joseph "Joe" Thompson bring this action against defendant Knife River Corporation ("Knife River") for personal injuries and property damage suffered by Plaintiffs and in support thereof state:

## INTRODUCTION

1.

Water is one of the essential elements of life. Families in Oregon are entitled to clean drinking water in their homes. Humans are not the only ones dependent on water, but livestock as well. Without access to clean water, every task becomes a challenge: cooking, washing dishes, washing clothes, bathing, gardening, and so much more.

2.

In or around 2015, Knife River, a large mining company, located a patch of natural aggregate, meaning sand, gravel or crushed stone used to make concrete, in a valley north of



STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600 FAX (503) 227-6840

Prineville, Oregon known as the "Woodward Pit." The valuable aggregate that Knife River sought to mine was located next to and beneath an aquifer that provided the only drinking water for the residents and livestock in the valley.

3.

As the demand for aggregate increased, Knife River cut corners to access the resources it needed to solidify its position as one of the leaders in the United States aggregate industry, including disturbing and polluting the aquifer with harsh toxic chemicals that entered the aquifer through Knife River's unauthorized mining techniques and unlined wastewater ponds.

4.

For those in the valley who rely on private wells, their pipes clogged, their washing machines broke, and their dishwashers quit working. Hot water heaters malfunctioned. Water pressure decreased. Black sludge was found in toilet tanks.

5.

As the valley homes started to fall apart, so did their farms. Livestock were born dead. Sows and cows stopped conceiving. Eggs never hatched after incubation. Animals that were born suffered extreme neurological defects with fleeting life spans.

6.

Bathing became a nightmare for the residents. Rashes and bumps started to appear on children. Irritable, dry, itchy skin plagued the valley.

7.

The Thompson dream home became a nightmare they could not escape.

8.

Knife River's desire to become a leader in the aggregate industry forever changed the valley north of Prineville, Oregon. Knife River's negligence has cost Plaintiffs an exorbitant amount in financial damages and will continue to cost them unless Knife River mining is stopped and it



STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600 FAX (503) 227-6840

adequately compensates Plaintiffs by restoring their property to the state it was in before Knife River mined the Woodward Pit.

**PARTIES**

9.

Plaintiffs Julie and Joe Thompson are residents of Prineville, Oregon.

10.

Knife River is a publicly traded company organized under Delaware law with its principal place of business in Bismark, North Dakota. Knife River is one of the nation's largest construction materials and contracting businesses, with over one billion tons of rock and over 5,700 employees across the western United States.[1] Knife River has approximately 231 locations throughout the U.S. with fifty-six locations in Oregon, including the Woodward mine in Prineville, Oregon.

11.

Knife River conducts regular, sustained business in Oregon and Multnomah, County. As explained on its website, Knife River provides aggregate, concrete and asphalt throughout the Portland metropolitan area.

**JURISDICTION AND VENUE**

12.

This Court has jurisdiction over the parties and this case. Plaintiffs are citizens and residents of Oregon. Defendant is a corporation that expanded into Oregon in 1993 and now operates over fifty-six locations in Oregon. All claims alleged herein are based on Oregon law.

13.

Defendant maintains its principal place of business in Bismarck, North Dakota and is authorized to do business in Oregon. Defendant conducts regular, sustained business in

[1] *About Us*, Knife River https://www.kniferiver.com/about-us/ (last visited April 2, 2026).



STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600 FAX (503) 227-6840

Multnomah County, Oregon. In accordance with ORS 14.080(2), venue is proper in Multnomah County, Oregon.

## FACTUAL ALLEGATIONS

### I. Chemicals Found in the Aquifer

#### A. Manganese

14.

Manganese is a heavy metal on the periodic table identified as "Mn." Manganese can appear in both groundwater and surface water from natural sources or as a result of human activity such as mining and industrial discharges.[2]

15.

Manganese in low oxygen environments stays in an insoluble form as shown below:



16.

However, once oxygen is introduced into the environment, manganese changes into a soluble form that can sink into groundwater. Soluble manganese can appear as a black sludge in water. The below illustrates soluble manganese in a toilet tank:

[2] *Manganese FAQ*, Water Quality Association https://wqa.org/resources/manganese/ (last visited April 2, 2026).



STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600 FAX (503) 227-6840



17.

Contaminated water results in a metallic-taste, strong odor, black stains on tubs/showers, toilets, plumbing fixtures, and laundry.[3]

18.

Human exposure to manganese can occur through drinking water, and elevated levels of manganese in drinking water presents health concerns.[4]

19.

The Environmental Protection Agency ("EPA") promulgated the National Primary Drinking Water Regulations ("NPDWRS") to provide maximum contaminant levels ("MCLs") for contaminants in drinking water.[5]

20.

MCLs are designed to "protect the public against consumption of drinking water contaminants that present a risk to human health" and provide the "maximum allowable amount

---

[3] *Id.*

[4] *Id.*

[5] *Secondary Drinking Water Standards: Guidance for Nuisance Chemicals*, U.S. EPA, https://www.epa.gov/sdwa/secondary-drinking-water-standards-guidance-nuisance-chemicals (last visited April 2, 2026).

of a contaminant in drinking water."[6] The EPA also created secondary maximum contaminant levels ("SMCLs"). While the EPA does not enforce SMCLs, the purpose is to provide "guidelines to assist public water systems in managing their drinking water for aesthetic considerations, such as taste, color, and odor."[7]

21.

The EPA's SMCL for manganese is 0.05 mg/L with the noticeable effects at this level including black to brown color, staining, and a bitter metallic taste, which was adopted by the EPA in 2004.[8] That same year, the EPA also set a lifetime health advisory level of 0.3 mg/L for chronic exposure to manganese.

22.

The development of adverse health effects is dependent on the "route of exposure, the chemical form, the age of exposure, and an individual's nutritional status."[9] Groups especially at risk to adverse health effects include infants, elderly, and those with liver disease.[10]

23.

Blood concentrations of 0.010 mg/L or more have shown to be associated with elevated fatty liver enzymes, leading to the development of non-alcoholic fatty liver disease. Manganese when consumed is absorbed by the gastrointestinal tract and subsequently transported to mitochondria-rich tissues within the body, especially in the liver, where manganese is rapidly concentrated. Research has shown that those with significantly higher blood manganese levels are associated with an increase in the risk of non-alcoholic fatty liver disease.

---

[6] *Id.*

[7] *Id.*

[8] *Id.*

[9] *Manganese FAQ*, Water Quality Association https://wqa.org/resources/manganese/ (last visited April 2, 2026).

[10] *Id.*



STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600 FAX (503) 227-6840

24.

Adverse health effects in children include neurological issues, changes in behavior, lower IQ, speech and memory difficulties, and lack of coordination and movement control after drinking toxic levels of contaminated water.[11] Infants are especially at risk for neurological developments as they absorb more manganese than adults if they rely on formula made with contaminated water.

25.

Manganese toxicity ("manganism") can cause a Parkinson's-like syndrome resulting in severe tremors and neurological effects. In addition, other adverse health effects in humans include muscle weakness, lethargy, and damage to the reproductive and nervous systems.[12]

26.

"Nervous system and reproductive effects have been observed in animals after high oral doses of manganese."[13] In addition, domestic animals can experience depressed growth, depressed appetite, and altered brain function.

27.

Not only does manganese pose a health risk, it also poses a risk to pipes and water-reliant home appliances, including but not limited to water heaters, dishwashers, toilets, and washing machines. Elevated levels of manganese can severely impact "water system or energy costs."[14]

---

[11] *Id.*

[12] *Manganese*, Dep't. of Environment, Great Lakes, and Energy, https://www.michigan.gov/egle/about/organization/drinking-water-and-environmental-health/drinking-water/contaminants-of-emerging-concern/manganese (last visited April 10, 2026).

[13] *ToxFAQs for Manganese*, Agency for Toxic Substances and Disease Registry ("ATSDR"), https://wwwn.cdc.gov/tsp/toxfaqs/ToxFAQsDetails.aspx?faqid=101&toxid=23 (last visited June 17, 2026).

[14] Meghan Sittler, *Iron and manganese in water*, UNIV. OF NEB.-LINCOLN (July 27, 2018) https://water.unl.edu/article/drinking-water-wells/iron-and-manganese-water/.



STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600 FAX (503) 227-6840

28.

Once manganese is reduced to a soluble form in water, it cannot be removed without specialized filtration systems, such as a Chemical Oxidation + Filtration system, in which chlorine, hydrogen peroxide, or potassium permanganate is injected to oxidize manganese. The process is followed by a filter to remove particles.

29.

Another method is through Manganese Dioxide Catalytic Filtration. This process uses filtration media, often Pyrolox or Filox, to accelerate oxidation and filtration without needing extra chemicals. This process is ideal for water with higher concentrations of manganese such as those present here. This process can be illustrated as:




30.

Once in place, these filtration systems need constant upkeep through replacing chemicals, media, and removal of the soluble manganese.

**B. Arsenic**

31.

Arsenic is a metalloid on the periodic table identified as "As." Arsenic is naturally found in



STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600 FAX (503) 227-6840

the environment. Arsenic can get into groundwater from runoff and leaching.[15]

32.

Arsenic was officially recognized as a carcinogen in the 1980s and is registered with the International Agency for Research on Cancer.

33.

Arsenic's MCL per the EPA is 0.010 mg/L. The State of Oregon recommends young children immediately stop drinking water with levels above 0.035 mg/L. Adverse health effects in children can occur after just two weeks of drinking water with arsenic.[16]

34.

Arsenic levels over 0.002 mg/L are enough to increase cancer risks and non-cancer health effects if present in the primary drinking water source for a year or more.[17]

35.

When ingested, "arsenic is quickly absorbed into the bloodstream via the gastrointestinal system."[18] After absorption, "arsenic binds to red blood cells, and deposits in the liver, kidneys, muscle, bone, hair, skin, and nails, but is expelled mainly through the urine."[19] Arsenic interferes

---

[15] *ToxFAQs for Arsenic*, Agency for Toxic Substances and Disease Registry, https://wwwn.cdc.gov/tsp/toxfaqs/ToxFAQsDetails.aspx?faqid=19&toxid=3 (last visited June 17, 2026).

[16] *Arsenic and drinking water,* Oregon Health Authority https://www.oregon.gov/oha/ph/healthyenvironments/drinkingwater/monitoring/documents/health/arsenic.pdf (last visited June 16, 2026).

[17] *2026 Health Consultation Crook County Wells – Draft for Public Comment*, Oregon Health Auth.,https://www.oregon.gov/oha/PH/HEALTHYENVIRONMENTS/TRACKINGASSESSMENT/ENVIRONMENTALHEALTHASSESSMENT/Documents/Crook%20County%20Wells%20HC_20260421_bookmarked.pdf (last visited June 16, 2026).

[18] Shahid Yousuf Ganie et al., *Arsenic toxicity: sources, pathophysiology and mechanism*, 13 TOXICOL. RSCH. 1 (2023) https://pmc.ncbi.nlm.nih.gov/articles/PMC10762673.

[19] Young-Seoub Hong et al., *Health Effects of Chronic Arsenic Exposure*, 47 J. PREV. MED. PUB. HEALTH 5 (2014) https://pmc.ncbi.nlm.nih.gov/articles/PMC4186552/#b6-jpmph-47-5-245.



STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600 FAX (503) 227-6840

with cellular metabolism by inhibiting enzymatic reactions, causes oxidative stress and can influence gene expression and cell signals.[20]

36.

Drinking water with high levels of arsenic can lead to adverse health effects, including thickening and discoloration of the skin, stomach pain, nausea, vomiting, diarrhea, heart, lung, liver, immune, nervous, or reproductive system disorders and diabetes, cancer of the bladder, lungs, skin, kidney, liver, and prostate.[21] Children are especially at risk to drinking contaminated water with high levels of arsenic.

37.

The first symptoms of long-term exposure of arsenic are observed on the skin and include pigmentation changes and skin lesions, which can be a precursor to skin cancer.[22]

38.

Adverse health effects in animals that consume water contaminated with arsenic include intense abdominal pain, diarrhea, staggering gait, irregular pulse, and dehydration. Animals most sensitive to drinking arsenic contaminated water include cats, horses, cattle, sheep, swine, and birds.[23]

39.

Arsenic can be removed from private wells through reverse osmosis, a water filtration device that removes contaminants from the water supplied to a specific fixture. "Pressure forces water

---

[20] *Arsenic: A centuries - old poison*, National Capital Poison Center, https://www.poison.org/articles/arsenic (last visited June 17, 2026).

[21] *Arsenic and drinking water,* Oregon Health Authority, https://www.oregon.gov/oha/ph/healthyenvironments/drinkingwater/monitoring/documents/health/arsenic.pdf (last visited June 16, 2026).

[22] *Arsenic*, World Health Organization, https://www.who.int/news-room/fact-sheets/detail/arsenic (last visited June 16, 2026).

[23] Tam Garland, *Inorganic Arsenical Toxicosis in Animals,* MERCK VETERINARY MANUEL (Sept. 2024) https://www.merckvetmanual.com/toxicology/arsenic-poisoning/inorganic-arsenical-toxicosis-in-animals.



STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600 FAX (503) 227-6840

through a semi-permeable membrane, creating a stream of treated water, called permeate, and a stream of reject water called concentrate or brine."[24]

### C. Aluminum

40.

Aluminum is a metal identified on the periodic table as "Al." Mining can lead to high levels of aluminum in the environment.[25]

41.

Once in the environment, aluminum cannot be destroyed, it can only chemically change its form.[26]

42.

In 1991, the EPA set the SMCL for aluminum to be 0.05 to 0.2 mg/L. This level of aluminum has noticeable effects including colored water.[27]

43.

Aluminum levels above 0.2 mg/L pose harm to human health, especially those with kidney disease leading to the development of bone and brain diseases. Animals who consume aluminum levels over 5 mg/L can suffer damage to their nervous system and lose muscular strength.[28]

---

[24] *Point-of-Use Reverse Osmosis Systems*, U.S. EPA https://www.epa.gov/watersense/point-use-reverse-osmosis-systems (last visited June 17, 2026).

[25] *Public Health Statement for Aluminum*, Agency for Toxic Substances and Disease, https://wwwn.cdc.gov/tsp/phs/phs.aspx?phsid=1076&toxid=34 (last visited June 17, 2026).

[26] *ToxFAQs for Aluminum*, Agency for Toxic Substances and Disease, https://wwwn.cdc.gov/tsp/toxfaqs/ToxFAQsDetails.aspx?faqid=190&toxid=34 (last visited June 17, 2026).

[27] *Secondary Drinking Water Standards: Guidance for Nuisance Chemicals*, U.S. EPA, https://www.epa.gov/sdwa/secondary-drinking-water-standards-guidance-nuisance-chemicals (last visited April 2, 2026).

[28] AGENCY FOR TOXIC SUBSTANCES AND DISEASE, *supra* note 26.



STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600 FAX (503) 227-6840

44.

When consumed, aluminum is absorbed by the small intestine. As aluminum enters the body it may "disrupt or inhibit several enzymes and change protein synthesis, nucleic acid function, and cell membrane permeability."[29]

45.

Aluminum can be removed from drinking water through reverse osmosis.[30]

**D. Lead**

46.

Lead is a naturally occurring toxic metal found in small amounts in the Earth's crust and identified on the periodic table as "Pb." The most common human lead-exposures come from the release of lead from industrial facilities.[31]

47.

In the 1980s, lead was classified as a probable human carcinogen. In 1991, the EPA set the MCLs in drinking water at zero "because lead is a toxic metal that can be harmful to human health even at low exposure levels."[32] Children are specifically susceptible to adverse health effects when exposed to lead.

---

[29] Rahimzadeh, Mehrdad Rafati, Rahimzadeh, Mehravar Rafati, Kazemi, Sohrab, Amiri, Roghayeh Jafarian, Pirzadeh, Marzieh, Moghadamnia, Ali Akbar, *Aluminum Poisoning with Emphasis on Its Mechanism and Treatment of Intoxication*, EMERGENCY MEDICINE INTERNATIONAL, (Jan. 11, 2022).

[30] *Aluminum Fact Sheet*, Water Quality Association, https://wqa.org/wp-content/uploads/2022/09/2014_Aluminum.pdf (last visited June 17, 2026).

[31] *Learn About Lead*, U.S. EPA, https://www.epa.gov/lead/learn-about-lead (last visited June 17, 2026).

[32] *Basic Information about Lead in Drinking Water*, U.S. EPA, https://www.epa.gov/ground-water-and-drinking-water/basic-information-about-lead-drinking-water (last visited June 17, 2026).



STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600 FAX (503) 227-6840

48.

When lead enters the body, it "disrupts cellular processes through ion mimicry, replacing essential metals in enzymes and proteins and leading to mitochondrial dysfunction, oxidative stress, DNA damage, and epigenetic modifications."[33]

49.

Children can experience behavior and learning problems, lower IQ and hyperactivity, slowed growth, hearing problems, and anemia. In rarer cases, children can suffer seizures, comas, and death after consumption of lead. Adults can experience cardiovascular effects, decreased kidney function, and reproductive problems.[34]

**II. Prineville, Oregon**

50.

Prineville, Oregon was incorporated in 1868 and is the county seat of Crook County.[35]

51.

Prineville is nestled in the Crooked River Basin with multiple streams feeding into the Crooked River including the Rye Grass Irrigation Canal; the Crooked River then empties into the Deschutes River.

52.

A valley is located north of Prineville with residents living near U.S. Highway 26 and the Rye Grass Irrigation Canal. These residential homes rely on private wells as their sole source of water.

---

[33] Antastasiia Generalova et al., *The Mechanisms of Lead Toxicity in Living Organisms*, 15 J. XENOBIOTICS 5 (2025).

[34] U.S. EPA, *supra* note 32.

[35] *Oregon Blue Book*, Oregon Secretary of State https://sos.oregon.gov/blue-book/Pages/local/counties/crook.aspx (last visited April 8, 2026).



STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600 FAX (503) 227-6840

53.

Beneath the valley lays an aquifer that supplies drinking water for residents, pets, and livestock. Since the early 1900s settlors of the valley relied on the aquifer to provide drinking water. One private domestic well is approximately 112 years old.

54.

The aquifer supplied clean drinking water for those who called the valley home without incident until on or around 2021.

55.

The distance from the surface to the aquifer is not uniform throughout the valley. Private domestic wells in the valley are classified as either accessing the shallow or deep aquifer, based on where the well first touches the water when it is drilled. The wells are connected to the same aquifer despite the difference in moniker.

56.

In addition to residential homes, the valley is home to local farms that plant various row crops and raise livestock. Beneath the valley, there are various sand and gravel deposits that are referred to as "aggregate."

57.

In addition to the aggregate, lay other natural minerals and metals that had not disturbed the water in the aquifer.

**III. Aggregate and Aggregate Mining Practices**

58.

Aggregates are the dominant materials used in construction and large infrastructure projects. The most common natural aggregates used are sand, gravel, and crushed rock, which is found in areas that are also favorable for other land uses (such as farming, or other potential uses that are beneficial to surrounding towns).



STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600 FAX (503) 227-6840

59.

In 2019 alone, Oregon held a value of $201 million worth of sand, gravel, and overall construction aggregates, with $185 million worth of crushed stone aggregates.[36] Aggregate in Oregon is mined on both private and public land.[37]

60.

Aggregate mining operations vary depending on where the aggregate is located, whether water will be encountered while mining, and other factors.

61.

Open-pit mining requires removing overburden material, including vegetation, soil, and non-aggregate rock to access the aggregate materials. The aggregate is typically dry and can be removed with a bulldozer or front-end loader.

62.

Dredging is a mining technique used to remove aggregate from waterbeds and requires specialized equipment. Dredging can disrupt particles and sediment resulting in a decrease in water quality.

63.

Dewatering involves removing excess water from a mining site when a deposit extends below the water table. Water is pumped out of the ground to lower the ground water level. This allows access to the aggregate that was once below the water level. Once the aggregate is removed and the pumping ceases, the water table rises to its original level or higher.

64.

After aggregate is removed, it must be cleaned and processed to meet the size and quality standards sought based on its use.

---

[36] National Minerals Information Center, *The Mineral Industry of Oregon*, USGS https://www.usgs.gov/centers/national-minerals-information-center/mineral-industry-oregon (last visited June 17, 2026).

[37] *Planning for Sand and Gravel (Aggregate) Mining*, Dep't of Land Conservation and Dev., https://www.oregon.gov/lcd/nrre/pages/aggregate-planning.aspx (last visited April 2, 2026).



STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600 FAX (503) 227-6840

65.

Aggregate can be processed in different ways to remove inconsistent particles from the ideal aggregate size. Once sorted, the aggregate is washed to remove impurities and other materials.

66.

Aggregate mining leaves a lasting environmental impact on the area being mined if not carefully completed and then restored to its previous state. In addition, the amount of water required to process and clean aggregate also places strain on resources in the area.

67.

The Oregon Department of Geology and Mineral Industries ("DOGAMI") "oversees the state's mineral production and works to minimize impacts of natural resource extraction and to maximize the opportunities for land reclamation."[38]

68.

The Oregon Department of Environmental Quality ("DEQ") issues two main water mining permits industrial National Pollutant Discharge Elimination System ("NPDES") and industrial Water Pollution Control Facilities ("WPCF") permits. NPDES permits are required when operations discharge industrial wastewater to surface waters whereas a WPCF permit is required for industrial wastewater discharges that stay on the industrial site.

69.

In addition, the county is allowed to issue what is known as a Conditional Use Permit ("CUP"). The CUP can place restrictions on the mining operation and can regulate issues including but not limited to noise and light pollution, operational hours, and traffic.

---

[38] *DOGAMI About Us*, Oregon.gov, https://www.oregon.gov/dogami/about/pages/index.aspx (last visited April 8, 2026).



STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600 FAX (503) 227-6840

## IV. Knife River Corporation

### A. Knife River's Business Model

70.

Knife River is "an aggregates-based, vertically integrated construction materials and contracting services company"[39] and specializes in aggregate, asphalt, and concrete.[40]

71.

Knife River is the fourth largest producer of sand and gravel in the United States.[41]

72.

Knife River was founded in 1917 in North Dakota and was purchased by Montana-Dakota Utilities in 1945. In 1985, Knife River became part of the MDU Resources Group. Knife River expanded into the State of Oregon in 1993. Knifer River also operates in Alaska, Hawai'i, Montana, Wyoming, Idaho, Minnesota, Texas, Iowa, Nebraska, South Dakota, and Washington.

73.

As of 2023, Knife River separated from MDU Resources and became a publicly traded company on the New York Stock Exchange traded under the symbol "KNF."[42]

74.

Knife River recorded over $3 billion in total revenue for 2025, an increase of $24.8 million. Knife River's revenue for its aggregates division totaled over $600 million. In total, Knife River sold 32.5 million tons of aggregate supplied by its mining operations.[43]

---

[39] *Knife River Corp. Reports Fourth Quarter and Full-Year 2025 Financial Results*, Knife River (Feb. 17, 2026), https://investors.kniferiver.com/news/news-details/2026/Knife-River-Corporation-Reports-Fourth-Quarter-and-Full-Year-2025-Financial-Results/default.aspx.

[40] Knife River, https://www.kniferiver.com/ (last visited June 17, 2026).

[41] *2025 Annual Report | Proxy Statement | Form 10-K*, Knife River Corporation, https://s202.q4cdn.com/946701843/files/doc_financials/2025/ar/KNF-2025-Annual-Report-Website.pdf (last visited June 17, 2026).

[42] *Investor FAQs*, Knife River, https://investors.kniferiver.com/investor-info/investor-faqs/default.aspx (last visited June 17, 2026).

[43] KNIFE RIVER CORPORATION, *supra* note 42.



STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600 FAX (503) 227-6840

**B. Knife River Mining Operation at Woodward Pit**

75.

Knife River operates fifty-six sites within the State of Oregon, including one located at 4755 NW Stahancyk Lane, Prineville, Oregon 97754, seen below:[44]



76.

In 2015, Knife River submitted an operating and reclamation plan to DOGAMI to transform industrial Tax Lots 702 and 703 into an aggregate mining pit, referred to as the "Woodward Pit."

77.

Before submitting the operating and reclamation plan, Tax Lot 702 was designated for heavy industrial use and Tax Lot 703 was designated for agricultural use. The image below from August 30, 2012, shows what the proposed lots looked like prior to mining:



[44] *Locations*, Knife River, https://www.kniferiver.com/locations/ (last visited June 16, 2026).



STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600 FAX (503) 227-6840

78.

Mr. Woodward claimed that a single bench mining approach would be used to secure aggregate materials from the site.

79.

Mr. Woodward's application claimed that no mining would occur below the groundwater level, and no mine site dewatering would be necessary. The application further confirmed that some water was encountered in several test pits, but in moving forward with the aggregate mining it was not expected to result in a discharge of water.

80.

The application claimed that water and storm water would be contained on the proposed Woodward site and a pond would be created to contain process water used to clean aggregate.

81.

The application disclosed that there was an unnamed stream flowing southwest near the northwest corner of the proposed mining site. The application also stated that water would be contained in a closed system provided by the Ochoco Irrigation District.

82.

The application claimed that the proposed mine depth would be approximately thirty feet and that groundwater depth was at depth of twenty-four feet. In addition to water supplied by the Ochoco Irrigation District, there was a private well on the Woodward Pit that produced 300 gallons of water per minute.

83.

The application stated that when aggregate mining of the Woodward Pit was completed, reclamation procedures would be used to restore the land to the condition it was before mining. Proposed reclamation techniques included mixing fines from aggregate washing with existing silt as reclamation fill. The application claimed that processing and stockpile sites would be reclaimed for industrial use as a level gravel-covered lot on to pasture grass.



STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600 FAX (503) 227-6840

84.

After DOGAMI accepted Mr. Woodward's operating and reclamation plan, Crook County took over the approval process to designate Tax Lot 702 and 703 for aggregate mining purposes.

85.

Opposition arose from neighbors living next to the proposed Woodward Pit. Neighbors voiced concerns about water quality, noise, dust, losing the agricultural nature of the lot, and other safety concerns.

86.

In an attempt to silence and remove opposition, Knife River approached certain neighbors to address concerns about water quality before the operation ever began. In doing so, Knife River provided filtration systems and new wells to these neighbors of the Woodward Pit. The neighbors who benefited from the new filtration systems were required to sign non-disclosure agreements.

87.

On or about October 23, 2015, despite concerns raised by community members relating to water, environmental impacts, and safety issues, Crook County approved the designation of Tax Lots 702 and 703 for aggregate mining purposes. In approving the aggregate mining site, Crook County issued a CUP for the Woodward Pit.

88.

The goal of the CUP was to allow the non-confirming use of the land based on the new zoning designation, but to also prevent negative impacts to the surrounding area. The CUP issued by Crook County addressed various concerns that neighbors and residents of the community had raised in discussions about the mining operation. The County included various conditions and requirements on the Woodward Pit.



STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600 FAX (503) 227-6840

89.

The CUP for the Woodward Pit contained the following limitations:

a. limiting tax lot 703 to sand and gravel extraction;

b. limiting tax lot 702 to processing activities;

c. mining setbacks;

d. mining depth;

e. water supply;

f. traffic;

g. noise and operating hours;

h. dust mitigation;

i. mobile concreate batch plant;

j. lighting;

k. berms;

l. reclamation procedures;

m. groundwater protection;

n. insect mitigation; and

o. weed control.

90.

Under the groundwater protection section of the CUP, Knife River could not dewater the Woodward Pit. If dewatering needed to be done, Knife River would have to obtain the relevant permits from DOGAMI and DEQ. Further, all mining ponds would be backfilled with material sourced on the site, except that sediment from the settling ponds would not be placed within the water of any mining ponds. The existing water well on the Woodward Pit must not be used for aggregate washing operations, but it can be used for irrigation on the berm (a raised mound of earth used to direct water runoff) and aggregate stockpiles if needed.



STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600 FAX (503) 227-6840

91.

DOGAMI issued an operating permit to Knife River for the Woodward Pit on or around April 13, 2016. After approval from Crook County, Knife River applied to DEQ to receive its WPCF-1000 general permit. Soon after, Knife River began preparing the land for the aggregate mining operations on the Woodward Pit and stored contaminated water in unlined settling ponds.

**C. Knife River's Actions Disrupted and Disturbed the Aquifer**

92.

Knife River ran into water while mining the Woodward Pit. To access the aggregate, Knife River started to dewater the Woodward Pit. Instead of following the requirements of the CUP and gaining approval, Knife River engaged in dewatering practices in 2020. The image below depicts dewatering equipment at the Woodward Pit:



93.

Per the CUP, Knife River was supposed to create well water reports through an independent expert at five wells to create a baseline against which possible future changes in water quality could be assessed. Knife River did not test wells per CUP requirements, and a proper baseline was never established.



STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600 FAX (503) 227-6840

94.

As Knife River engaged in dewatering and started to disturb the aggregate at the Woodward Pit, the process exposed significant amounts of oxygen to the insoluble manganese. In addition to de-watering, Knife River's surface area exposure contributed to the exposure and release of manganese. As Knife River stopped dewatering the site, the water table rose and captured the now soluble manganese. The leaching process caused significantly high levels of manganese in groundwater, often exceeding the SMCL set by the EPA.

95.

Knife River released other heavy metals including aluminum, arsenic, lead, and iron into the aquifer. The combination of these metals with the manganese are found and continue to be found in the aquifer.

96.

In addition to Knife River's failure to follow proper procedures for its CUP, Knife River ignored its WPCF permit. From around May 2020 through August 2020, for three days each month, Knife River discharged sand and gravel wash water comingled with excavation dewatering water and stormwater that had been exposed to mining and quarrying activities from the Woodward Pit into the Rye Grass Irrigation Canal.[45]

97.

Knife River failed to obtain the proper NPDES permit allowing it to discharge water from the Woodward Pit. DEQ explicitly found that Knife River was not permitted to discharge anything into the Rye Grass Irrigation Canal.

98.

For violating Oregon law under ORS § 468B.050(1)(a), DEQ found Knife River guilty of a Class I violation and assessed a $20,822 civil penalty.

---

[45] Notice of Civil Penalty Assessment and Order, Case No. WQ/SW_ER-2021-548.



STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600 FAX (503) 227-6840

99.

On or around 2024, Knife River completed the bulk of its mining at the Woodward Pit for aggregate materials. In or around 2025, though, Knife River conducted aggregate mining on a small patch of land near the wash plant.

100.

On multiple occasions in 2024 and 2025, Knife River brought off site materials to the Woodward Pit to be washed and processed. Knife River placed the washed sediment into the unlined holding/settling ponds. Knife River then removed the sediment from the bottom of the settling ponds and used it for the reclamation process by dumping it into an empty mining cell. Knife River's CUP required that all mining ponds would be backfilled with material sourced on the Woodward Site, not offsite materials.







STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600 FAX (503) 227-6840





**D. Other Violations of the CUP Permit**

101.

In addition to Knife River's heavy metal contamination of the aquifer, Knife River has shown blatant disregard for other CUP requirements.

102.

Knife River failed to work with Crook County's Vector Control District to develop a mosquito control plan before commencing mining operations, which violated and continues to violate the CUP.

103.

Knife River violated its CUP regarding traffic flow. Per the CUP, all parking created by the operation shall be accommodated on the Woodward Pit premises and entirely off street. Knife River in violation of its CUP allowed trucks to park on the side of the road, forcing individuals to cross over into the oncoming lane of traffic to avoid hitting the trucks. In addition, Knife River vehicles exceeded the number of trips allowed per day by the CUP.



STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600 FAX (503) 227-6840



104.

Knife River violated its CUP by failing to submit an annual weed control report, which resulted and continues to result in noxious weeds impacting neighboring fields.



105.

Knife River failed to comply with the berm requirements of the CUP by failing to plant evergreen trees on the top of the South Farm Lot Berm. If trees died, Knife River was to replace with a similar sized trees as available. Knife River allowed for two dead pine trees to remain on top of the South Farm Lot Berm without replacing them.



STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600 FAX (503) 227-6840



106.

Knife River violated its CUP by operating the Woodward Pit during non-operational hours.

107.

Further, the individual who performed several water quality tests for Knife River has been critiqued by the State of Oregon for failing to follow proper sampling procedures, including failing to disinfect equipment.

108.

DEQ launched enforcement actions against Knife River for two previous water quality violations.[46]

109.

Knife River representatives admitted that they would not want to live next to one of their mining operations *or* drink water near their mining site.

110.

The State of Oregon has conducted two rounds of water testing through Maul Foster & Alongi, which revealed elevated levels of manganese, arsenic, and aluminum. The water also tested positive for lead, which is not safe for consumption at any level.

---

[46] *See* Notice of Civil Penalty Assessment and Order, Case No. WQ/SP-WR-2020-163; Notice of Civil Penalty Assessment and Order, Case No. WQ-SW-WR-2023-535.

111.

Knife River misrepresented water quality data. To claim that no change had occurred to the aquifer, Knife River only tested domestic wells that had filtration systems that Knife River had installed to properties before mining at the Woodward Pit occurred. Knife River would use that data to insist that its activities had not caused a decrease in water quality in the aquifer.

112.

Knife River claimed that it would restore the Woodward Pit to pre-mining conditions. However, representatives of Knife River told neighbors that the land would be useless after the mining and reclamation procedures were complete.

113.

Knife River made inconsistent statements about how the de-watering process would impact the water rights of surrounding residents in the valley.

**E. Knife River's Operation status**

114.

Knife River is no longer actively mining the Woodward Pit after removing all the aggregate. But Knife River is currently bringing in aggregate from another location in Crook County to the Woodward Pit for washing and processing. The water from the washing and processing is also stored in the unlined ponds at the Woodward Pit.

**V. The Thompson Homestead & Health**

115.

Plaintiffs Julie and Joe Thompson obtained their home in 2007 through a living trust deed. The Thompson homestead is located at 5950 NW Green Valley Road Prineville, Oregon 97754. The Thompsons wanted their home to be a quiet oasis to live and raise livestock.

116.

The Thompson homestead has only one water source: the aquifer beneath the valley. The Thompsons' have three wells throughout their property that are all connected to the aquifer. The



STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600 FAX (503) 227-6840

well supplying water to the house is approximately 240 feet deep and connected to the "deep" aquifer. The Thompson homestead uses that water for drinking, cooking, bathing, gardening, livestock, and other domestic purposes. The well supplying water to livestock and animals on the property is approximately 220 feet deep and connected to the "deep" aquifer. The third well on the property is approximately 50 feet deep and connected to the "shallow" aquifer.

117.

When Julie and Joe moved into their home, they had no issues with taste, discoloration, smell, or staining of their water.

118.

The Thompsons' oasis, however, started to crumble. In or around 2021 and 2022, Julie's water reliant appliances started to break one by one. At first, the Thompson family attributed the broken appliances to bad luck and had no idea why their appliances stopped working.

119.

Then came the black sludge. Black residue started to appear in the toilet tanks, sinks, bathtubs, and pipes. The water pressure within the home started to decrease.

120.

The breaking appliances and black sludge were only the beginning. Next, the animals that lived on the Thompson homestead started to suffer.

121.

In approximately 2021 and 2022, the Thompson family lost goats to gruesome deaths. These goats had no previous health problems before unexpectedly dying.

122.

Then the water began to impact Julie and Joe. Both started to have skin reactions after bathing. Julie and Joe experienced dry and itchy skin after bathing. Julie experienced stomach, joint pain and inflammation since Knife River's mining presence in the area.



STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600 FAX (503) 227-6840

123.

Julie and Joe could not figure out why these things were happening until talking with neighbors and learning that they too were experiencing black sludge, animal deaths, and faulty appliances.

124.

The common factor that emerged in discussions with neighbors was their proximity to the Woodward Pit. The Thompson homestead is located less than one mile from the Woodward Pit:




125.

Water testing by the state through Maul Foster & Alongi in 2024 and 2025 revealed that the Thompson homestead was above the SCML for manganese. The testing of the Thompson homestead also revealed arsenic, aluminum, and iron.

126.

The well has shown levels of manganese above the SCML set by the EPA. Julie and Joe consumed and used water for bathing over the SCML for manganese for a prolonged period of time. Thus, Julie and Joe have experienced damage at a cellular level.



STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600 FAX (503) 227-6840

127.

After Knife River began mining the Woodward mine, the arsenic levels at the Thompson homestead have been consistently above the 0.002 mg/L level therefore increasing the risk of cancers and other adverse health effects.

128.

Julie and Joe have consumed and used water for bathing that contained levels of arsenic above the 0.002 mg/L threshold. Thus, their exposure has resulted in cellular structural changes that increase their risk of developing cancer and other adverse health effects.

129.

The Thompson family's use and enjoyment of their property have been severely impacted, which has forced them to make extreme decisions in the interest of protecting their most basic human need – their health. Julie and Joe have spent time and money to get access to clean water for drinking. The Thompsons have suffered from financial hardships due to their water supply contamination including appliance repairs, flushing of pipes with a bleach water treatment through all the plumbing in the home, and the installation of a water filtration system into their home that costs thousands of dollars and requires significant upkeep.

130.

Mentally, this experience has been incredibly distressing for the family, and Julie in particular. Julie has been in survival mode advocating for herself and her neighbors to have access to clean water. Taking away from her ability to simply and most importantly be a wife and enjoy her oasis, Julie has been forced to be her family's strongest advocate against Knife River's actions in pursuit of having the same water quality her family's well once had before Knife River entered Prineville.

131.

The Thompsons have suffered and continued to suffer noneconomic damages including mental suffering, emotional distress, inconvenience, and interference with their normal and usual



STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600 FAX (503) 227-6840

activities. Overall, Knife River's contamination of the Prineville water table has caused significant physical, emotional, and financial harm to the Thompson family.

## CLAIM FOR RELIEF I

## NEGLIGENCE

132.

Plaintiffs reallege and incorporate by reference each of the above paragraphs.

133.

Knife River breached its duty to exercise ordinary care, which caused Plaintiffs' injuries.

134.

A reasonably careful mining and aggregate wash plant would not circumvent the proper permitting process and engage in non-permitted mining activities that would result in heavy metal water contamination of an aquifer.

135.

Knife River knew its operations were causing and continue to cause manganese and heavy metal contamination in the aquifer, on which Plaintiffs rely for clean drinking water.

136.

Knife River knew high concentrations of manganese along with other heavy metals can have adverse health effects and can have detrimental effects in a home's structural integrity and appliances.

137.

Despite this knowledge, Knife River continued its behavior, causing manganese and heavy metal contamination into the aquifer.

138.

Knife River's decision to engage in activities it knew or should have known would harm people living near the Woodward Pit and rely on the water from the aquifer constitutes a breach of Knife River's ordinary duty of care.



STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600 FAX (503) 227-6840

139.

Knife River breached its duty of care, which was a substantial factor in causing Plaintiffs' injuries as described above.

140.

As a result of Knife River's breach of its duties, Plaintiffs have suffered injuries and will continue to suffer injuries. Plaintiffs rely on their private well for water and the contamination of their water include a reduction in property value, upkeep and maintenance of a filtration system, the inconvenience associated with being unable to use water from the well for drinking and bathing, cellular damage caused by exposure to manganese and other heavy metals, and increased risks of developing non-alcoholic fatty liver disease and cancer.

**CLAIM FOR RELIEF II**

**NEGLIGENCE *PER SE* FOR VIOLATION OF ORS 468B.025(1)(B)**

141.

Plaintiffs reallege and incorporate by reference each of the above paragraphs.

142.

ORS § 468B.025(1)(b) prohibits discharging "any wastes into the waters of the state if the discharge reduces the quality of such waters below the water quality standards established by rule for such waters by the Environmental Quality Commission."

143.

The Oregon Department of Environmental Quality has created a list of water quality standards designed to reduce or prevent toxic pollutants in Oregon waterways. (Table 40 Administrative Rule 340-041-8033).[47] Table 40 sets human health criteria limit for manganese at

[47] *Aquatic Life Water Quality Criteria for Toxic Pollutants*, State of Oregon DEQ, https://www.oregon.gov/deq/FilterRulemakingDocs/tables303140.pdf (last visited June 17, 2026).



STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600 FAX (503) 227-6840

0.10 mg/L and arsenic in freshwater at .0021 mg/L. The EPA approved Table 40 in an August 4, 2015 letter to Wendy Wiles, the administrator for DEQ's Environmental Solutions Division.[48]

144.

Knife River has both directly and indirectly discharged mining wastewater into the Prineville water table. The mining wastewater contains manganese and other heavy metals and Knife River has discharged this water and placed it in unlined ponds that can leach into surrounding streams.

145.

Plaintiffs have been injured as a result of Knife River's violation of ORS 468B.025(1)(b). Knife River's discharge of wastewater in violation of the statute caused Plaintiffs' personal and property damage. Knife River's conduct has rendered Plaintiffs' private well unfit for use, forcing Plaintiffs, who rely on a private well, to either continually expose themselves to an unacceptably high risk of illness or rely on expensive and/or cumbersome alternative drinking water sources. As Oregon citizens and owners of a homestead reliant on well water, Plaintiffs are exactly the type of people the statute was designed to protect, and their injuries are the exact harm the statute was designed to prevent. *See* ORS 468B.015 (describing the statutory policy and explaining that pollution of Oregon water is a "menace to public health and welfare, creates public nuisances, is harmful to wildlife" and "impairs domestic...and other legitimate beneficial uses of water").

## CLAIM FOR RELIEF III

## NEGLIGENCE *PER SE* FOR VIOLATION OF ORS 468B.025(2)

146.

Plaintiffs reallege and incorporate by reference each of the above paragraphs.

---

[48] Letter from Daniel Opalski to Wendy Wiles (Aug. 4, 2015) at 11, https://www.epa.gov/system/files/documents/2021-11/epa_approval_revised_oregon_wqs_08042015.pdf.



STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600 FAX (503) 227-6840

147.

ORS 468B.025(2) states that "[n]o person shall violate the conditions of any waste discharge permit issued under ORS 468B.050 (Water quality permit.)."

148.

As described above, the EPA has adopted SMCL for contaminants. The EPA's SMCL establishes that manganese's standard is 0.05 mg/L.

149.

Knife River has both directly and indirectly discharged mining wastewater into the Prineville water table. The mining wastewater contains manganese and other heavy metals and Knife River has discharged this water and placed it in unlined ponds that can leach into surrounding streams.

150.

Knife River wrongfully discharged mining wastewater into the Prineville water table without the proper permit.

151.

Plaintiffs have been injured as a result of Knife River's violation of ORS 468B.025(2). Knife River's discharge of wastewater in violation of the statute caused Plaintiffs' personal and property damage. Knife River's conduct has rendered private wells unfit for use, forcing Plaintiffs, who rely on a private drinking well, to either continually expose themselves to an unacceptably high concentrations of manganese and other heavy metals or rely on expensive and/or cumbersome alternative drinking water sources. Knife River's conduct has also caused damage at a cellular level to Plaintiffs, who have ingested and bathed in water contaminated with manganese in excess of 0.05 mg/L.

152.

Plaintiffs are members of the class of persons the statute is meant to protect. As explained in ORS 468B.015, water pollution is "a menace to public health and welfare," and it is therefore "the public policy of the state ... [t]o provide for the prevention, abatement and control of new or



STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600 FAX (503) 227-6840

existing water pollution." Plaintiff is a member of the public whose health and welfare are at risk due to Knife River's pollution under ORS 468B.025(2).

153.

Further, the injuries Plaintiffs sustained, including harm to their health and welfare, are precisely the type of injuries the statute was enacted to prevent. See ORS 468B.025(2) (noting the State's intention to address the "menace to public health and welfare" caused by water pollution).

## CLAIM FOR RELIEF IV

## TRESPASS

154.

Plaintiffs reallege and incorporate by reference each of the above paragraphs.

155.

Knife River has caused, and continues to cause, pollutants to enter onto real property owned by Plaintiffs. This trespass was intentional because Knife River knew that the entry of pollutants onto Plaintiffs' property was certain, or substantially certain, to result from their mining and washing operations at the Woodward Pit. Despite this substantial certainty, Knife River went ahead with its operations at the Woodward Pit.

156.

Such intrusions re-occur throughout each day as additional contaminants enter onto Plaintiffs' property.

157.

Publicity surrounding the water crisis in Prineville and its repeated violations of its CUP, as well as Knife River's own awareness of water contamination issues in Prineville, put Knife River on notice that its operations were causing manganese and other heavy metals to pollute Plaintiffs' property. It was therefore reasonably foreseeable that Knife River's operations would disturb Plaintiffs' possessory interest.



STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600 FAX (503) 227-6840

158.

Knife River's trespass is without right or license and violates Plaintiffs' exclusive property rights. The pollutants that Knife River caused to spread through the groundwater in Prineville and to contaminate Plaintiffs' water constitute an unreasonable interference with possessory use of Plaintiffs' property.

159.

Knife River's intentional trespass has resulted in actual and substantial damages to Plaintiffs' real property that is contaminated with unsafe levels of manganese.

## CLAIM FOR RELIEF V

## TRESPASS TO CHATTELS

160.

Plaintiffs reallege and incorporate by reference each of the above paragraphs.

161.

Knife River has caused, and continues to cause, pollutants to interfere with Plaintiffs' possessory right in its chattel, including but not limited to Plaintiffs' water-reliant appliances and livestock. This trespass was intentional because Knife River knew that the entry of pollutants onto Plaintiffs' property was certain, or substantially certain, to result from its mining and washing operations at the Woodward Pit. Despite this substantial certainty, Knife River went ahead with its operations at the Woodward Pit.

162.

Such intrusions re-occur many times each day as additional contaminants enter and interfere with Plaintiffs' right of possession and use with this chattel.

163.

Knife River was on notice, including from its violations of its CUP, that its operations were causing manganese and other heavy metals to interfere with Plaintiffs' right of possession. It was



STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600 FAX (503) 227-6840

therefore reasonably foreseeable that Knife River's operations would disturb Plaintiffs' possessory interest.

164.

Knife River's trespass is without right or license and violates Plaintiffs' exclusive rights of possession and use. The pollutants that Knife River caused to spread through the groundwater in Prineville and to contaminate Plaintiffs' water constitute an unreasonable interference with possessory use of Plaintiffs' respective chattel.

165.

Knife River's intentional trespass has resulted in actual and substantial damages to chattel owned by Plaintiffs because their property is now contaminated with unsafe levels of manganese.

## CLAIM FOR RELIEF VI

## PRIVATE NUISANCE

166.

Plaintiffs reallege and incorporate by reference each of the above paragraphs.

167.

Knife River's continuous violations of the CUP permit, disposal of industrial wastewater into the Rye Grass Irrigation Canal, and disturbance of the aquifer has substantially and unreasonably interfered with Plaintiffs' use and enjoyment of their land.

168.

Knife River knew or had reason to know that its actions were in violation of the CUP permit and that its activities were causing manganese and other heavy metal contamination of the aquifer.

169.

Knife River knew or had reason to know that the aquifer it was disturbing was the only water source to neighboring homes of the Woodward Pit. Knife River knew or had reason to know that



STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600 FAX (503) 227-6840

Plaintiffs relied on their private well to provide for their water needs throughout their property, thereby interfering with Plaintiffs' use and enjoyment of their property.

170.

Knife River's actions have in fact interfered with Plaintiffs' use and enjoyment of their property. Because Plaintiffs' private well water is contaminated with manganese and other heavy metals, Plaintiffs and their livestock are unable to rely on their well to provide safe drinking water.

## CLAIM FOR RELIEF VII

## PUBLIC NUISANCE

171.

Plaintiffs reallege and incorporate by reference each of the above paragraphs.

172.

Knife River's continuous violations of the CUP permit, disposal of industrial wastewater into the Rye Grass Irrigation Canal, and disturbance of the aquifer has substantially and unreasonably interfered with Plaintiffs' right to water.

173.

Knife River knew or had reason to know that its actions were in violation of the CUP permit and that its activities were causing manganese and other heavy metal contamination of the aquifer.

174.

Knife River knew or had reason to know that the aquifer it was disturbing was the only water source to neighboring homes of the Woodward Pit. Knife River knew or had reason to know that Plaintiffs relied on their private well to provide for their water needs throughout their property, thereby interfering with Plaintiffs' right to water.



STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600 FAX (503) 227-6840

175.

Knife River's actions have in fact interfered with Plaintiffs' right to water, those actions have affected Plaintiffs' use and enjoyment of their property and chattels, along with their health. Because Plaintiffs' private well water is contaminated with manganese and other heavy metals, Plaintiffs and their livestock are unable to rely on their well to provide safe drinking water.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request judgment against Defendant as follows:

A. For an order prohibiting Defendant from any mining activity at the Woodward Mining site and to prohibit expansion onto other sites;

B. For an order compelling Defendant to provide clean, potable water to Plaintiffs;

C. For an order compelling Defendant to conduct and pay for medical monitoring for Plaintiffs under Oregon tort law;

D. Economic damages in an amount to be proven at trial and not less than $1 million dollars for loss of land use, loss of water use, and loss of chattels;

E. Noneconomic damages in an amount to be proven at trial and not less than $25 million;

F. For all general and compensatory damages provided and awarded by the jury or this Court; and

G. For such other and further relief as the Court deems just and equitable under the circumstances.

## JURY DEMAND

Plaintiff hereby demands a jury trial on all claims triable by right.



STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600 FAX (503) 227-6840

DATED this 9th day of July, 2026.

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.

By: _s/ Chloe A. Jasper_
**Steve Larson,** OSB No. 863540
**Chloe A. Jasper**, OSB No. 253957
209 SW Oak Street, Suite 500
Portland, Oregon 97204
Telephone: (503) 227-1600
Facsimile: (503) 227-6840
Email:
slarson@stollberne.com
cjasper@stollberne.com

PAUL LLP

**Richard M. Paul III** (*pro hac* forthcoming)
**Ashlea G. Schwarz** (*pro hac* forthcoming)
**Katherine Miles** (*pro hac* forthcoming)
600 Broadway Boulevard, Suite 600
Kansas City, Missouri 64105
Telephone: (816) 984-8100
Facsimile: (816) 984-8101
Email:
Rick@PaulLLP.com
Ashlea@PaulLLP.com
Katie@PaulLLP.com

***Attorneys for Plaintiffs***

Trial Attorney: Steve D. Larson, OSB No. 863540

# EXHIBIT B

IN THE CIRCUIT COURT OF THE STATE OF OREGON

FOR THE COUNTY OF MULTNOMAH

| | |
|---|---|
| JULIE THOMPSON and JOSEPH THOMPSON,<br><br>Plaintiffs,<br><br>v.<br><br>KNIFE RIVER CORPORATION,<br><br>Defendant. | Case No. 26CV35556<br><br>**ANSWER OF KNIFE RIVER CORPORATION** |

**ANSWER TO CLAIMS**

Knife River Corporation ("Knife River") hereby admits, denies, or otherwise responds to the allegations in the Complaint filed by Julie Thompson and Joseph Thompson as follows:

1. Knife River states that paragraph 1 states a legal conclusion regarding an entitlement to drinking water, to which no response is required. Knife River lacks sufficient information to admit or deny the remaining allegations in paragraph 1, and on that basis denies them.

2. Knife River denies the allegations in paragraph 2.

3. Knife River denies the allegations in paragraph 3.



BRADLEY BERNSTEIN SANDS LLP
1425 SW 20th Ave., Suite 201
Portland, OR 97201

4. Knife River denies the allegations to the extent they suggest action by Knife River caused the alleged injuries. Otherwise, Knife River lacks sufficient knowledge to admit or deny the allegations in paragraph 4, and on that basis denies them.

5. Knife River denies the allegations to the extent they suggest action by Knife River caused the alleged injuries. Otherwise, Knife River lacks sufficient knowledge to admit or deny the allegations in paragraph 5, and on that basis denies them.

6. Knife River denies the allegations to the extent they suggest action by Knife River caused the alleged injuries. Otherwise, Knife River lacks sufficient knowledge to admit or deny the allegations in paragraph 6, and on that basis denies them.

7. Knife River denies the allegations to the extent they suggest action by Knife River caused the alleged injuries. Otherwise, Knife River lacks sufficient knowledge to admit or deny the allegations in paragraph 7, and on that basis denies them.

8. Knife River denies the allegations in paragraph 8.

9. Knife River lacks sufficient information to admit or deny the allegations in paragraph 9, and on that basis denies them.

10. Knife River admits it is a publicly traded company organized under Delaware law with its principal place of business in Bismarck, North Dakota. Knife River denies the remaining allegations in paragraph 10.

11. Knife River states that paragraph 11 states a legal conclusion regarding "regular, sustained business," to which no response is required. To the extent a response is required to this allegation, Knife River denies it. Knife River denies that it provides aggregate, concrete and asphalt throughout the Portland metropolitan area. Knife River otherwise denies the allegations in paragraph 11.

12. Knife River lacks sufficient knowledge to admit or deny whether Plaintiffs are citizens and residents of Oregon. Knife River admits the claims in the Complaint are based on Oregon law. Knife River denies the remaining allegations in paragraph 12 and denies that the Court has jurisdiction over Knife River.



**BRADLEY BERNSTEIN SANDS LLP**
1425 SW 20th Ave., Suite 201
Portland, OR 97201

13. Knife River states that paragraph 13 states a legal conclusion to which no response is required. To the extent a response is required, Knife River admits its principal place of business is Bismarck, North Dakota. Knife River denies the remaining allegations in paragraph 13, and specifically denies that venue is proper in Multnomah County, Oregon.

14. Knife River states that the cited materials speak for themselves. Except as set forth above, Knife River lacks sufficient information to admit or deny the allegations in paragraph 14 and therefore denies them.

15. Knife River lacks sufficient information to admit or deny the allegations in paragraph 15 and therefore denies them.

16. Knife River lacks sufficient information to admit or deny the allegations in paragraph 16 and therefore denies them.

17. Knife River states that the cited materials speak for themselves. Except as set forth above, Knife River lacks sufficient information to admit or deny the allegations in paragraph 17 and therefore denies them.

18. Knife River states that the cited materials speak for themselves. Except as set forth above, Knife River lacks sufficient information to admit or deny the allegations in paragraph 18 and therefore denies them.

19. Knife River states that the cited materials speak for themselves. Except as set forth above, Knife River lacks sufficient information to admit or deny the allegations in paragraph 19 and therefore denies them.

20. Knife River states that the cited materials speak for themselves. Except as set forth above, Knife River lacks sufficient information to admit or deny the allegations in paragraph 20 and therefore denies them.

21. Knife River states that the cited materials speak for themselves. Except as set forth herein, Knife River lacks sufficient information to admit or deny the allegations in paragraph 21 and therefore denies them.



**BRADLEY BERNSTEIN SANDS LLP**
1425 SW 20th Ave., Suite 201
Portland, OR 97201

22. Knife River states that the cited materials speak for themselves. Except as set forth above, Knife River lacks sufficient information to admit or deny the allegations in paragraph 22 and therefore denies them.

23. Knife River lacks sufficient information to admit or deny the allegations in paragraph 23 and therefore denies them.

24. Knife River states that the cited materials speak for themselves. Except as stated herein, Knife River lacks sufficient information to admit or deny the allegations in paragraph 24 and therefore denies them.

25. Knife River states the cited materials speak for themselves. Except as set forth herein, Knife River lacks sufficient information to admit or deny the allegations in paragraph 25 and therefore denies them.

26. Knife River states that the cited materials speak for themselves. Except as set forth herein, Knife River lacks sufficient information to admit or deny the allegations in paragraph 26, and on that basis denies the allegations and characterizations in paragraph 26.

27. Knife River states that the cited materials speak for themselves. Except as set forth herein, Knife River denies the allegations and characterizations in paragraph 27.

28. Knife River lacks sufficient information to admit or deny the allegations in paragraph 28 and therefore denies them.

29. Knife River lacks sufficient information to admit or deny the allegations in paragraph 29 and therefore denies them.

30. Knife River lacks sufficient information to admit or deny the allegations in paragraph 30 and therefore denies them.

31. Knife River states that the cited materials speak for themselves. Except as set forth herein, Knife River lacks sufficient information to admit or deny the allegations in paragraph 31, and on that basis denies the allegations and characterizations in paragraph 31.



**BRADLEY BERNSTEIN SANDS LLP**
1425 SW 20th Ave., Suite 201
Portland, OR 97201

32. Knife River states that the cited materials speak for themselves. Except as set forth herein, Knife River lacks sufficient information to admit or deny the allegations in paragraph 32, and on that basis denies the allegations and characterizations in paragraph 32.

33. Knife River states that the cited materials speak for themselves. Except as set forth herein, Knife River lacks sufficient information to admit or deny the allegations in paragraph 33, and on that basis denies the allegations and characterizations in paragraph 33.

34. Knife River states that the cited materials speak for themselves. Except as set forth herein, Knife River lacks sufficient information to admit or deny the allegations in paragraph 34, and on that basis denies the allegations and characterizations in paragraph 34.

35. Knife River states that the cited materials speak for themselves. Except as set forth herein, Knife River lacks sufficient information to admit or deny the allegations in paragraph 35, and on that basis denies the allegations and characterizations in paragraph 35.

36. Knife River states that the cited materials speak for themselves. Except as set forth herein, Knife River lacks sufficient information to admit or deny the allegations in paragraph 36, and on that basis denies the allegations and characterizations in paragraph 36.

37. Knife River states the cited materials speak for themselves. Except as set forth herein, Knife River lacks sufficient information to admit or deny the allegations in paragraph 37, and on that basis denies the allegations and characterizations in paragraph 37.

38. Knife River states that the cited materials speak for themselves. Except as set forth herein, Knife River lacks sufficient information to admit or deny the allegations in paragraph 38, and on that basis denies the allegations and characterizations in paragraph 38.



**BRADLEY BERNSTEIN SANDS LLP**
1425 SW 20th Ave., Suite 201
Portland, OR 97201

39. Knife River states that the cited materials speak for themselves. Except as set forth herein, Knife River lacks sufficient information to admit or deny the allegations in paragraph 39, and on that basis denies the allegations and characterizations in paragraph 39.

40. Knife River states that the cited materials speak for themselves. Except as set forth herein, Knife River lacks sufficient information to admit or deny the allegations in paragraph 40, and on that basis denies the allegations and characterizations in paragraph 40.

41. Knife River states that the cited materials speak for themselves. Except as set forth herein, Knife River lacks sufficient information to admit or deny the allegations in paragraph 41, and on that basis denies the allegations and characterizations in paragraph 41.

42. Knife River states that the cited materials speak for themselves. Except as set forth herein, Knife River lacks sufficient information to admit or deny the allegations in paragraph 42, and on that basis denies the allegations and characterizations in paragraph 42.

43. Knife River states that the cited materials speak for themselves. Except as set forth herein, Knife River lacks sufficient information to admit or deny the allegations in paragraph 43, and on that basis denies the allegations and characterizations in paragraph 43.

44. Knife River states that the cited materials speak for themselves. Except as set forth herein, Knife River lacks sufficient information to admit or deny the allegations in paragraph 44, and on that basis denies the allegations and characterizations in paragraph 44.

45. Knife River states that the cited materials speak for themselves. Except as set forth herein, Knife River lacks sufficient information to admit or deny the allegations in paragraph 45, and on that basis denies the allegations and characterizations in paragraph 45.



**BRADLEY BERNSTEIN SANDS LLP**
1425 SW 20th Ave., Suite 201
Portland, OR 97201

46. Knife River states that the cited materials speak for themselves. Except as set forth herein, Knife River lacks sufficient information to admit or deny the allegations in paragraph 46, and on that basis denies the allegations and characterizations in paragraph 46.

47. Knife River states that the cited materials speak for themselves. Except as set forth herein, Knife River lacks sufficient information to admit or deny the allegations in paragraph 47, and on that basis denies the allegations and characterizations in paragraph 47.

48. Knife River states that the cited materials speak for themselves. Except as set forth herein, Knife River lacks sufficient information to admit or deny the allegations in paragraph 48, and on that basis denies the allegations and characterizations in paragraph 48.

49. Knife River states that the cited materials speak for themselves. Except as set forth above, Knife River lacks sufficient information to admit or deny the allegations and characterizations in paragraph 49 and on that basis denies the allegations and characterizations in paragraph 49.

50. Knife River lacks sufficient information to admit or deny the allegations and characterizations in paragraph 50 and on that basis denies the allegations in paragraph 50.

51. Knife River lacks sufficient information to admit or deny the allegations and characterizations in paragraph 51 and on that basis denies the allegations in paragraph 51.

52. Knife River lacks sufficient information to admit or deny the allegations and characterizations in paragraph 52 and on that basis denies the allegations in paragraph 52.

53. Knife River lacks sufficient information to admit or deny the allegations and characterizations in paragraph 53 and on that basis denies the allegations in paragraph 53.

54. Knife River lacks sufficient information to admit or deny the allegations and characterizations in paragraph 54 and on that basis denies the allegations in paragraph 54.

55. Knife River denies the allegations in paragraph 55.



**BRADLEY BERNSTEIN SANDS LLP**
1425 SW 20th Ave., Suite 201
Portland, OR 97201

56. Knife River lacks sufficient information to admit or deny the allegations and characterizations in paragraph 56 and on that basis denies the allegations in paragraph 56.

57. Knife River lacks sufficient information to admit or deny the allegations and characterizations in paragraph 57 and on that basis denies the allegations in paragraph 57.

58. Knife River lacks sufficient information to admit or deny the allegations and characterizations in paragraph 58 and on that basis denies the allegations and characterizations in paragraph 58.

59. Knife River states that the cited materials speak for themselves. Except as set forth above, Knife River lacks sufficient information to admit or deny the allegations and characterizations in paragraph 59 and on that basis denies the allegations and characterizations in paragraph 59.

60. Knife River admits the allegations and characterizations in paragraph 60.

61. Knife River lacks sufficient information to admit or deny the allegations and characterizations in paragraph 61 and on that basis denies the allegations and characterizations in paragraph 61.

62. Knife River lacks sufficient information to admit or deny the allegations and characterizations in paragraph 62 and on that basis denies the allegations and characterizations in paragraph 62.

63. Knife River lacks sufficient information to admit or deny the allegations and characterizations in paragraph 63 and on that basis denies the allegations and characterizations in paragraph 63.

64. Knife River denies the allegations and characterizations in paragraph 64.

65. Knife River denies the allegations and characterizations in paragraph 65.

66. Knife River denies the allegations and characterizations in paragraph 66.

67. Knife River states that the cited materials speak for themselves. Except as set forth above, Knife River lacks sufficient information to admit or deny the allegations and characterizations in paragraph 67 and on that basis denies the allegations and characterizations in paragraph 67.



**BRADLEY BERNSTEIN SANDS LLP**
1425 SW 20th Ave., Suite 201
Portland, OR 97201

68. Knife River states that paragraph 68 states a legal conclusion as to when permits are required to which no response is required. To the extent a response is required, Knife River lacks information sufficient to admit or deny the allegation in paragraph 68 and on that basis denies the allegation in paragraph 68.

69. Knife River states that paragraph 69 states a legal conclusion to which no response is required. To the extent a response is required, Knife River lacks information sufficient to admit or deny the allegation in paragraph 69 and on that basis denies the allegation in paragraph 69.

70. Knife River admits the allegations in paragraph 70.

71. Knife River admits the allegations in paragraph 71.

72. Knife River denies the allegations in paragraph 72.

73. Knife River admits that as of June 1, 2023, Knife River separated from MDU Resources and became a publicly traded company on the New York Stock Exchange traded under the symbol "KNF."

74. Knife River denies the allegations in paragraph 74.

75. Knife River denies the allegations in paragraph 75.

76. Knife River denies the allegations in paragraph 76.

77. Knife River admits that Tax Lot 702 was designated for heavy industrial use and Tax Lot 703 was designated for agricultural use. Knife River lacks sufficient information to admit or deny the remaining allegations in paragraph 77 and therefore denies them.

78. Knife River states that the cited application speaks for itself. Except as set forth herein, Knife River lacks information sufficient to admit or deny the allegations in paragraph 78 and on that basis denies the allegations and characterizations in paragraph 78.

79. Knife River states that the cited application speaks for itself. Except as set forth herein, Knife River lacks information sufficient to admit or deny the allegations in paragraph 79 and on that basis denies the allegations and characterizations in paragraph 79.



**BRADLEY BERNSTEIN SANDS LLP**
1425 SW 20th Ave., Suite 201
Portland, OR 97201

80. Knife River states that the cited application speaks for itself. Except as set forth herein, Knife River lacks information sufficient to admit or deny the allegations in paragraph 80 and on that basis denies the allegations and characterizations in paragraph 80.

81. Knife River states that the cited application speaks for itself. Except as set forth herein, Knife River lacks information sufficient to admit or deny the allegations in paragraph 81 and on that basis denies the allegations and characterizations in paragraph 81.

82. Knife River states that the cited application speaks for itself. Except as set forth herein, Knife River lacks information sufficient to admit or deny the allegations in paragraph 82 and on that basis denies the allegations and characterizations in paragraph 82.

83. Knife River states that the cited application speaks for itself. Except as set forth herein, Knife River lacks information sufficient to admit or deny the allegations in paragraph 83 and on that basis denies the allegations and characterizations in paragraph 83.

84. Knife River denies the allegations in paragraph 84.

85. Knife River lacks sufficient knowledge to admit or deny the allegations in paragraph 85, and on that basis denies them.

86. Knife River denies the allegations in paragraph 86.

87. Knife River admits that on or about October 23, 2015, Crook County approved aggregate extraction and process water ponds on tax lot 703 and extraction and processing activities on tax lot 702, and issued a CUP for the Woodward Pit. Except as set forth herein, Knife River denies the allegations and characterizations in paragraph 87.

88. Knife River states that the CUP speaks for itself. Knife River admits that the CUP included various conditions and requirements on the Woodward Pit. Except as set forth herein, Knife River denies the allegations and characterizations in paragraph 88.

89. Knife River states that the CUP speaks for itself. Knife River denies that tax lot 703 was limited to sand and gravel extraction, and that tax lot 702 was limited to processing activities. Knife River denies Plaintiffs' allegations and characterizations in paragraph 89.

90. Knife River states that the CUP speaks for itself. Except as set forth herein, Knife River denies the allegations and characterizations in paragraph 90.



BRADLEY BERNSTEIN SANDS LLP
1425 SW 20th Ave., Suite 201
Portland, OR 97201

91. Knife River denies the allegations in paragraph 91.

92. Knife River denies the allegations in paragraph 92.

93. Knife River denies the allegations in paragraph 93.

94. Knife River denies the allegations in paragraph 94.

95. Knife River denies the allegations in paragraph 95.

96. Knife River denies the allegations in paragraph 96.

97. Knife River denies the allegations in paragraph 97.

98. Knife River denies the allegations in paragraph 98.

99. Knife River denies the allegations in paragraph 99.

100. Knife River denies the allegations in paragraph 100.

101. Knife River denies the allegations in paragraph 101.

102. Knife River denies the allegations in paragraph 102.

103. Knife River denies the allegations in paragraph 103.

104. Knife River denies the allegations in paragraph 104.

105. Knife River denies the allegations in paragraph 105.

106. Knife River denies the allegations in paragraph 106.

107. Knife River denies the allegations in paragraph 107.

108. Knife River denies the allegations in paragraph 108.

109. Knife River lacks sufficient information to admit or deny the allegation in paragraph 109, and on that basis denies it.

110. Knife River admits that the DEQ hired Maul Foster & Alongi to sample private drinking water wells in the Fall of 2024 and Spring of 2025. Knife River states that Maul Foster & Alongi's testing speaks for itself. Except as set forth herein, Knife River denies the allegations and characterizations in paragraph 110.

111. Knife River denies the allegations in paragraph 111.

112. Knife River denies the allegations in paragraph 112.

113. Knife River denies the allegations in paragraph 113.

114. Knife River denies the allegations in paragraph 114.



**BRADLEY BERNSTEIN SANDS LLP**
1425 SW 20th Ave., Suite 201
Portland, OR 97201

115. Knife River lacks sufficient information to admit or deny the allegations in paragraph 115, and on that basis denies them.

116. Knife River lacks sufficient information to admit or deny the allegations in paragraph 116, and on that basis denies them.

117. Knife River lacks sufficient information to admit or deny the allegations in paragraph 117, and on that basis denies them.

118. Knife River lacks sufficient information to admit or deny the allegations in paragraph 118, and on that basis denies them.

119. Knife River lacks sufficient information to admit or deny the allegations in paragraph 119, and on that basis denies them.

120. Knife River lacks sufficient information to admit or deny the allegations in paragraph 120, and on that basis denies them.

121. Knife River lacks sufficient information to admit or deny the allegations in paragraph 121, and on that basis denies them.

122. Knife River denies the allegations in paragraph 122.

123. Knife River lacks sufficient information to admit or deny the allegations in paragraph 123, and on that basis denies them.

124. Knife River lacks sufficient information to admit or deny the allegations in paragraph 124, and on that basis denies them.

125. Knife River lacks sufficient information to admit or deny the allegations in paragraph 125, and on that basis denies them.

126. Knife River lacks sufficient information to admit or deny the allegations in paragraph 126, and on that basis denies them.

127. Knife River denies the allegations in paragraph 127.

128. Knife River lacks sufficient information to admit or deny the allegations in paragraph 128, and on that basis denies them.

129. Knife River lacks sufficient information to admit or deny the allegations in paragraph 129, and on that basis denies them.



**BRADLEY BERNSTEIN SANDS LLP**
1425 SW 20th Ave., Suite 201
Portland, OR 97201

130. Knife River denies the allegations in paragraph 130.

131. Knife River denies the allegations in paragraph 131.

**Claim for Relief I**[1]

**Negligence**

132. Knife River incorporates each and every response to the allegations contained in paragraphs 1 through 131 as set forth above.

133. Knife River denies the allegations in paragraph 133.

134. Knife River states that paragraph 134 states a legal conclusion to which no response is required. To the extent a response is required, Knife River denies the allegations in paragraph 134.

135. Knife River denies the allegations in paragraph 135.

136. Knife River denies the allegations in paragraph 136.

137. Knife River denies the allegations in paragraph 137.

138. Knife River denies the allegations in paragraph 138.

139. Knife River denies the allegations in paragraph 139.

140. Knife River denies the allegations in paragraph 140.

**Claim for Relief II**

**Negligence *Per Se* for Violation of ORS 468B.025(1)(B)**

141. Knife River incorporates each and every response to the allegations contained in paragraphs 1 through 140 as set forth above.

142. Paragraph 142 states a legal conclusion to which no response is required.

143. Knife River states that the documents in paragraph 143 speak for themselves. Except as stated above, Knife River lacks sufficient information to admit or deny the allegations and characterizations in paragraph 143, and on that basis denies them.

144. Knife River denies the allegations in paragraph 144.

---

[1] For purposes of its Answer, Knife River has copied herein the headings Plaintiffs used in their Complaint. To the extent the headings are intended to be factual allegations, Knife River denies all such allegations.

145. Knife River denies the allegations in paragraph 145.

**Claim for Relief III**

**Negligence *Per Se* for Violation of ORS 468B.025(2)**

146. Knife River incorporates each and every response to the allegations contained in paragraphs 1 through 145 as set forth above.

147. Paragraph 147 states a legal conclusion to which no response is required.

148. Knife River states that the cited document speaks for itself. Except as set forth above, Knife River lacks sufficient information to admit or deny the allegations and characterizations in paragraph 148, and on that basis denies them.

149. Knife River denies the allegations in paragraph 149.

150. Knife River denies the allegations in paragraph 150.

151. Knife River denies the allegations in paragraph 151.

152. Knife River denies the allegations in paragraph 152.

153. Paragraph 153 states a legal conclusion to which no response is required. To the extent a response is required, Knife River denies the allegations in paragraph 153.

**Claim for Relief IV**

**Trespass**

154. Knife River incorporates each and every response to the allegations contained in paragraphs 1 through 153 as set forth above.

155. Knife River denies the allegations in paragraph 155.

156. Knife River denies the allegations in paragraph 156.

157. Knife River denies the allegations in paragraph 157.

158. Knife River denies the allegations in paragraph 158.

159. Knife River denies the allegations in paragraph 159.

**Claim for Relief V**

**Trespass to Chattels**

160. Knife River incorporates each and every response to the allegations contained in paragraphs 1 through 159 as set forth above.



BRADLEY BERNSTEIN SANDS LLP
1425 SW 20th Ave., Suite 201
Portland, OR 97201

161. Knife River denies the allegations in paragraph 161.

162. Knife River denies the allegations in paragraph 162.

163. Knife River denies the allegations in paragraph 163.

164. Knife River denies the allegations in paragraph 164.

165. Knife River denies the allegations in paragraph 165.

**Claim for Relief VI**

**Private Nuisance**

166. Knife River incorporates each and every response to the allegations contained in paragraphs 1 through 165 as set forth above.

167. Knife River denies the allegations in paragraph 167.

168. Knife River denies the allegations in paragraph 168.

169. Knife River denies the allegations in paragraph 169.

170. Knife River denies the allegations in paragraph 170.

**Claim for Relief VII**

**Public Nuisance**

171. Knife River incorporates each and every response to the allegations contained in paragraphs 1 through 170 as set forth above.

172. Knife River denies the allegations in paragraph 172.

173. Knife River denies the allegations in paragraph 173.

174. Knife River denies the allegations in paragraph 174.

175. Knife River denies the allegations in paragraph 175.

## PRAYER FOR RELIEF

176. The next paragraphs, numbered A-G, contain Plaintiffs' Prayer for Relief, to which no response is required. To the extent a response is required, Knife River denies the requested relief and denies that Plaintiffs are entitled to any relief whatsoever. Plaintiffs should take nothing.



**BRADLEY BERNSTEIN SANDS LLP**
1425 SW 20th Ave., Suite 201
Portland, OR 97201

177. Further, any allegations to which a response is required and have not been admitted, denied, or otherwise responded to, are hereby denied.

## AFFIRMATIVE DEFENSES

1. Knife River specifically reserves all separate or affirmative defenses that it may have against Plaintiffs. Knife River's investigation into the claims asserted by Plaintiffs is ongoing. Knife River reserves the right to allege further and additional affirmative defenses should they become known at a later date. This Answer is made without waiver of any jurisdictional defenses.

2. Knife River reserves the right to amend this Answer pursuant to ORCP 23.

3. By alleging the defenses set forth below, Knife River does not intend to modify or alter the burden of proof and/or burden of going forward with evidence that governs with respect to any particular issue at law or equity. All of the defenses pleaded herein are pleaded in the alternative, and none constitutes an admission of liability, or an admission that Plaintiffs are entitled to any of the relief sought.

4. As separate defenses to the Claims, Knife River alleges as follows:

### First Affirmative Defense

### (Lack of Personal Jurisdiction)

5. The Complaint is barred because the court does not have jurisdiction over Knife River.

### Second Affirmative Defense

### (Failure to State a Claim)

6. The Complaint is barred because each of the claims alleged therein fails to state a claim upon which any relief can be granted.

### Third Affirmative Defense

### (Failure to Mitigate Damages)

7. Plaintiffs may be barred from recovering damages, in whole or in part, for the harm alleged in the complaint by reason of their failure to mitigate such alleged damages.

### Fourth Affirmative Defense



BRADLEY BERNSTEIN SANDS LLP
1425 SW 20th Ave., Suite 201
Portland, OR 97201

**(No Proximate Cause)**

8. The Complaint is barred in whole or in part, because Knife River's acts or omissions were not the proximate cause of Plaintiffs' injuries.

**<u>Fifth Affirmative Defense</u>**

**(Intervening and/or Superseding Cause)**

9. Plaintiffs may be barred from recovery because the injuries or losses they sustained were caused, in whole or in part, by the unforeseeable intervening or superseding acts or omissions of others over whom Knife River had no control and for whose conduct Knife River is not responsible, or other unforeseeable, independent, intervening, or superseding event(s) or circumstance(s) beyond the control of Knife River.

**<u>Sixth Affirmative Defense</u>**

**(Negligence/Fault of Third Parties)**

10. Plaintiffs may be barred from recovery because the injuries or losses they sustained were caused, in whole or in part, by the negligent, reckless, or intentional unforeseeable acts of third parties who Knife River had neither the right, duty or opportunity to exercise control over, and who acted without the knowledge, participation, approval, or ratification of Knife River.

**<u>Seventh Affirmative Defense</u>**

**(Failure to Name Necessary Defendants)**

11. Plaintiffs' claims are subject to dismissal for Plaintiffs' failure to join indispensable parties.

**<u>Eighth Affirmative Defense</u>**

**(Unavoidable Accident / Act of God)**

12. Plaintiffs' damages, if any, were caused by an unavoidable accident or Act of God, which Knife River did not control, could not predict, and from which it did not have a duty to protect the plaintiffs.

**<u>Ninth Affirmative Defense</u>**

**(Compliance with Duty of Care)**



**BRADLEY BERNSTEIN SANDS LLP**
1425 SW 20th Ave., Suite 201
Portland, OR 97201

13. Plaintiffs' claims are barred because Knife River complied with the law and acted reasonably with the intent to obey the law and such compliance demonstrates that Knife River exercised due care and reasonable prudence.

**Tenth Affirmative Defense**

**(Compliance with Industry Standards)**

14. Plaintiffs' claims are barred because Knife River acted in conformity with industry standards based upon the state of knowledge existing at the time alleged in the Complaint.

**Eleventh Affirmative Defense**

**(No Negligence)**

15. Plaintiffs' claims are barred, in whole or in part, because Knife River was not negligent, and no conduct of Knife River resulted in any injury or damage to Plaintiffs.

**Twelfth Affirmative Defense**

**(Contributory/Comparative Negligence)**

16. At all times mentioned herein Plaintiffs were or may have been wholly or partially at fault, and conducted themselves so as to contribute partially, substantially, or wholly to their alleged injuries and damages, if any. The fault of Plaintiffs bars, in whole or in part, the damages which Plaintiffs seek to recover herein.

**Thirteenth Affirmative Defense**

**(Setoff for Insurance Payments)**

17. Plaintiffs may not recover on claims of damages or losses paid as a result of coverage under any applicable policy of insurance.

**Fourteenth Affirmative Defense**

**(Setoff for Other Collateral Sources)**

18. Plaintiffs may not recover on claims of damages or losses paid by any other sources.

**Fifteenth Affirmative Defense**

**(Authorization by Statute or Regulation)**



BRADLEY BERNSTEIN SANDS LLP
1425 SW 20th Ave., Suite 201
Portland, OR 97201

19. Plaintiffs' claims are barred, in whole or in part, because the actions and conditions complained of by Plaintiffs are expressly authorized by the State of Oregon, the Oregon Department of Geology and Mineral Industries, and the Oregon Department of Environmental Quality.

**Sixteenth Affirmative Defense**

**(Compliance with Statutes and Regulations)**

20. The Complaint is barred in whole or in part because Knife River neither acted nor failed to act in a manner that violated any statute, ordinance, or regulation.

**Seventeenth Affirmative Defense**

**(Negligence Per Se)**

21. Plaintiffs' claims for negligence per se are barred because none of the relevant statutes or regulations, or applicable rules, regulations or orders fix the standard of conduct applicable to Knife River or were implemented to prevent the harm Plaintiffs allege or to protect the class of persons including Plaintiffs.

**Eighteenth Affirmative Defense**

**(Waiver)**

22. Plaintiffs' claims are barred, in whole or in part, under the doctrine of waiver.

**Nineteenth Affirmative Defense**

**(Statute of Limitations)**

23. Plaintiffs' claims are barred, in whole or in part, by the applicable statutes of limitations, ORS 12.110 and ORS 12.080, or statute of repose, ORS 12.115.

**Twentieth Affirmative Defense**

**(Pre-Existing Injury/Illness)**

24. Plaintiffs' claims are barred, in whole or in part, because any harm, loss, injury, or damage alleged by Plaintiffs is attributable to a pre-existing injury or illness suffered by Plaintiffs.

**Twenty-first Affirmative Defense**

**(Assumption of Risk)**



**BRADLEY BERNSTEIN SANDS LLP**
1425 SW 20th Ave., Suite 201
Portland, OR 97201

25. Plaintiffs' claims are barred, in whole or in part, because any harm, loss, injury, or damage alleged by Plaintiffs is attributable in whole or in part to risks Plaintiffs voluntarily exposed themselves to with knowledge and appreciation of the extent and nature of these risks.

**<u>Twenty-second Affirmative Defense</u>**

**(Laches)**

26. Plaintiffs' claims are barred, in whole or in part, because Plaintiffs unreasonably delayed in asserting known claims, resulting in prejudice to Knife River.

**<u>Twenty-third Affirmative Defense</u>**

**(Lack of Standing – Public Nuisance)**

27. Plaintiffs' claim for public nuisance is barred in whole because Plaintiffs do not allege a "special injury" to maintain a cause of action for public nuisance.

**<u>Twenty-fourth Affirmative Defense</u>**

**(Insufficiency of Service)**

28. Plaintiffs' claims are barred, in whole or in part, because Plaintiffs have not sufficiently served Knife River with summons or process.

**<u>Twenty-fifth Affirmative Defense</u>**

**(Reservation of Right to Amend to Add Further Affirmative Defenses)**

29. Knife River presently has insufficient knowledge or information to form a belief as to whether it may have additional, as yet unstated, defenses available and therefore reserves the right to assert such additional defenses that are proper based on discovery, investigation or further analysis.

//

//

//



**BRADLEY BERNSTEIN SANDS LLP**
1425 SW 20th Ave., Suite 201
Portland, OR 97201

DATED: August 7, 2026

*/s/ Darin M. Sands*

Darin M. Sands, OSB No. 106624
dsands@bradleybernstein.com
**BRADLEY BERNSTEIN SANDS LLP**
1425 SW 20th Ave., Suite 201
Portland, Oregon 97201
Telephone: 503.734.2480

**GIBSON, DUNN & CRUTCHER LLP**
Stacie B. Fletcher (Pro Hac Vice forthcoming)
sfletcher@gibsondunn.com
1700 M Street, N.W.
Washington, DC 20036-4504
Telephone: 202.955.8500
Facsimile: 202.467.0539

Joseph D. Edmonds (Pro Hac Vice forthcoming)
jedmonds@gibsondunn.com
3161 Michelson Drive, Suite 1200
Irvine, CA 92612-4412
Telephone: 949.451.3800

Attorneys for Defendant Knife River Corporation

**CERTIFICATE OF SERVICE**

I hereby certify that on August 7, 2026, I served a true and correct copy of the foregoing ANSWER OF KNIFE RIVER CORPORATION on the parties listed below in the manner indicated:

By electronic service through the court's eFiling system pursuant to UTCR 21.100:

Steve Larson, OSB No. 863540
Chloe A. Jasper, OSB No. 253957
STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 SW Oak Street, Suite 500
Portland, Oregon 97204
slarson@stollberne.com
cjasper@stollberne.com

Attorneys for Plaintiffs

I also served a courtesy copy by first-class mail, by placing a copy thereof in a sealed envelope, with postage prepaid, as follows:

Richard M. Paul III
Ashlea G. Schwarz
Katherine Miles
PAUL LLP
600 Broadway Boulevard, Suite 600
Kansas City, Missouri 64105

Attorneys for Plaintiffs (*pro hac* forthcoming)

*/s/ Gina Elliott*
Gina Elliott, OSB No. 236165
gelliott@bradleybernstein.com

Attorneys for Defendant Knife River Corporation

# EXHIBIT C

# Register of Actions

Case No. 26CV35556

| | | |
|---|---|---|
| Julie Thompson, Joseph Thompson vs Knife River Corporation | § § § § § | Case Type: **Tort - General**<br>Date Filed: **07/09/2026**<br>Location: **Multnomah** |

## Party Information

| | | Attorneys |
|---|---|---|
| **Defendant** | **Knife River Corporation** | |
| **Plaintiff** | **Thompson, Joseph** | **STEVE D LARSON**<br>*Retained*<br>503 227-1600(W)<br><br>Chloe Annick Jasper<br>*Retained*<br>503 227-1600(W) |
| **Plaintiff** | **Thompson, Julie** | **STEVE D LARSON**<br>*Retained*<br>503 227-1600(W)<br><br>Chloe Annick Jasper<br>*Retained*<br>503 227-1600(W) |

## Events & Orders of the Court

**OTHER EVENTS AND HEARINGS**

07/09/2026 Complaint
*complaint negligence; NOT SUBJECT TO MANDATORY ARBRITATION*
Created: 07/09/2026 11:29 AM

07/09/2026 **Service**

| | | |
|---|---|---|
| Knife River Corporation | Served | 07/06/2026 |
| | Returned | 07/10/2026 |

Created: 07/09/2026 11:29 AM

07/10/2026 Proof - Service
Created: 07/21/2026 3:51 PM

## Financial Information

| | | | | |
|---|---|---|---|---|
| | **Plaintiff** Thompson, Julie | | | |
| | Total Financial Assessment | | | 1,178.00 |
| | Total Payments and Credits | | | 1,178.00 |
| | **Balance Due as of 08/07/2026** | | | **0.00** |
| 07/09/2026 | Transaction Assessment | | | 1,178.00 |
| 07/09/2026 | xWeb Accessed eFile | Receipt # 2026-510439 | Thompson, Julie | (1,178.00) |